UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Cornelius B. Lewis,
　　　　Plaintiff,

　　v.

Dee Battaglia, et. Al,
**FILED** Defendants.

}

Case No. 06 C 1024

Hon. Joan H. Lefkow
Judge Presiding

AUG 03 2015 EAA
8-3-15
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## Motion for Relief From Judgement Pursuant to Fed. R. Civ. P. Rule 60 (b) 3 a (c)

　　Now Come Plaintiff Cornelius B. Lewis in prose, and submit this Motion for Relief from Judgement pursuant to Fed. R. Civ. P. Rules 60 (b) (3) and (c). In support of this motion it is stated that:

　　1. In 2006, Plaintiff Lewis filed an Amended Complaint under 42 U.S.C. § 1983 claiming a violation of his Eighth Amendment right to be free from cruel and unusual punishment. Lewis alleged that defendants IDOC officials and health care provider Wexford Health Sources, had violated his constitutional rights by acting with deliberate indifference to his medical needs. Specifically, Lewis alleged that the defendants had provided inadequate treatment and accommodations for his various health conditions, including among

other things, problems with his feet and eyes. Lewis named as defendants, Roger E. Walker, Director of IDOC, Dee L. Battaglia, Warden of Stateville Correctional Center (SCC), Jimmy Dominguez, Assistant Warden of Programs, Willard O. Elyea, IDOC Agency Medical Director, and Aartha Ghosh, Stateville Medical Director. Walker was dismissed from the case. Battaglia left SCC, and Warden Terry McCann substituted as defendant pursuant to Fed. R. Civ. P. 25(d)(1) for purposes of official claims or request for injunctive relief.

2. On October 24, 2007, this court held a settlement conference via video from SCC. No official record was made of the conference. The purpose of the settlement conference was to broker a global settlement that would resolve all the claims.

3. On May 8, 2008, a hearing was held on an oral motion to enforce a settlement agreement. Such agreement was reached whereby defendants, among other things, would provide for Lewis to see various specialists to determine if Lewis needed special shoes and eye glasses. **Ex-A 6+14**

4. Lewis was ultimately transported to the University of Illinois Medical Center (UIC) and

thoroughly examined by Ophthalmology and Podiatry departments. It was determined that Lewis suffered from photophobia in both eyes. Transition lens eye glasses were prescribed for Lewis. Podiatry discovered, among other things, that Lewis suffered from dorsal extosis on both feet and bilateral injuries to both ankles. High-top gym shoes and low-cut loafers plus ankle braces were prescribed for Lewis. In addition, Lewis was prescribed ice twice daily to soak his feet and knees. It should also be noted that Lewis is currently awaiting knee replacement surgery on his left knee.

5. Some of the "among other things" or additional medical problems Lewis has that were addressed by defendant Ghosh prior to the settlement are: a) chronic lower back pain for which Lewis received an extra mattress and a heating pad to relieve the pain, particularly during the wee hours of the night, b) rubber shower slippers to accommodate the dorsal extosis, and c) front hand-cuffing with single cuffs and/or leather restraints due to a gun shot wound to his right wrist. Front cuffing so Lewis could cushion the impact when falling. Lewis also wears knee stabilizers on both legs due to falling and pain.

6. It should be noted that defendant Ghosh

put all SCC staff on notice that Lewis medical care was "**court mandated**" which he acknowledged by writing same at the top of Lewis' medical permits, and writing same throughout Lewis' medical file. This factor was also made known to SCC litigation and ADA coordinaters. And, it must be assumed that this 'notice' played a primary role as to why Lewis received proper medical care until recently. **Ex.1**

7. This court needs to know that Lewis paid for his own transition lens eye glasses that were given to him by order of Warden Shaw. **Ex.2.** Lewis also paid for his own rubber shower slippers which were approved by A.W. Osborne. **Ex.3.** In late 2013 Lewis' eye glasses broke, and he was given a pair of rubber frame, one size fits all eye glasses that would not stay on his face, and the lens fell out. In January of 2014, Lewis spoke with Assistant Warden of Operations Nicholas Lamb and showed him the glasses to which Mr. Lamb stated: "The prison I just left from outlawed those rubber frame glasses, so 1 understand your problem." He then said he would look into it. Since that encounter, Lewis has written several letters to different administrators and received 'some' replies. **Ex. 4.** To date, Lewis still doesn't have the transition lens eye glasses promised by SCC administrators and

prescribed by UIC Ophtometry and agreed to by defendants pursuant to the settlement.

8. Lewis has received 4 pairs of gym shoes since 2009, even though he is allowed 1 pair of medically prescribed shoes annually. And not one pair have been **high-top** as prescribed by Podiatry at UIC. In addition, Lewis has received just one pair of **low cut loafers** since 2009 which need to be replaced, but Lewis has been denied. And during a 3-11-14 shakedown of my cell while I was on the yard, my rubber shower shoes were confiscated and a disciplinary report was written for contraband. By the time Lewis went to the Adjustment committee for review whereby the report was expunged after the ADA Coordinator verified the legitimacy of Lewis having those shoes, the shoes had been destroyed. Lewis filed a grievance which is pending. **Ex. 5**

9. On April 20, 2015, during another shakedown Lewis was issued another disciplinary report for contraband, <u>my heating pad</u>. It was old, inoperable and not returned to Lewis. The disciplinary report was expunged and Lewis was told to request a new one from the health care unit. Dr. Obaisi ordered one and when it didn't arrive he submitted an approval request form to his

Pittsburgh headquarters, but neglected to include some pertinent information. The corporate medical director denied the request and recommended a back brace and physical therapy, both of which Lewis had tried in previous years, to no avail. Lewis still doesn't have a heating pad, he remains in ongoing pain, and has had only a few nights of undisturbed sleep over the past year.

10. Medical permits are issued by the SCC medical director based on his assessment of an inmates medical problem/s. Those permits are renewed annually. Lewis' medical permit is for a litany of medical problems. See **Ex. 6.** On 6-25-15 when Lewis met with Dr. Obaisi to have his medical permit renewed, Dr. Obaisi refused to renew the permit <u>in its entirety</u> as he had in previous years. He refused to include ice, an extra mattress, front hand cuffing with single cuffs, and for my rubber shower shoes. When I asked him why he refused to include those services and aids Dr. Obaisi stated: "The wardens won't allow me to renew permits for several items they don't want you inmates to have." I asked him why he allowed non-medical SCC staff to dictate his response

to my medical needs when there is no threat to security? Dr. Obaisi's response was for me to file a grievance and refused to discuss the matter any further. I took his advice and filed a grievance. See **Ex. 7.** At this writing, Lewis has not received a response from Dr. Obaisi or the grievance office.

11. Lewis also wrote SCC ADA coordinator Kevin Senor seeking his assistance in this matter. Four days later Lewis received **Ex. 8** from Warden Williams which was a response to his letter to Mr. Senor. This letter is a direct contradiction to what Dr. Obaisi told Lewis regarding why he (Obaisi) refused to renew Lewis' medical permit in its entirety.

12. On July 15, 2015 while getting a physical examination, the attending Dr. Martija asked Lewis how he was doing. Lewis brought up the swelling and pain in both feet and ankles, the chronic pain in his lower back area and his knees, his need for a new heating pad, and his need for new eye glasses. The Doctor consulted with a nurse who assists the Ophtamologist and instructed her to place Lewis on the July call line to be seen. Dr. Martija

then scheduled Lewis for X-rays of his lower back which requires leaving this facility. Lewis told the doctor that he would not go if the transport team persisted on handcuffing him in any manner aside from in front with single cuffs such as he had been doing for the past 35-plus years. Lewis also explained the difficulty he was having in Dr. Obaisi's refusal to renew his medical permit to allow for front cuffing and/or leather restraints. Dr. Martija's reply was: "Mr. Lewis, you are costing us a lot of money!" I asked her: "What is this thing with you Wexford people putting money before human lives?" She said: "What is that suppose to mean?" I told her that in 2011 our then medical Director, Doctor I. Carter told me that he was here at SCC to save Wexford money, not inmate's lives. She said she was here to do the same.

13. Between 7-17-15 and 7-24-15, Lewis received 3 passes for X-rays. When the transport officer asked Dr. Martija for a "one-time permit" she refused without asking the reason/s for the permit. Lewis has yet to get the X-rays.

14. Stateville has had about 20 different

## IX

Wardens since 2006 when the above-captioned cause was filed. This current administration has created more havoc than any other when it comes to inmate medical care. And no Wardens have any medical background to support them making major medical decisions that affect Lewis' life. Same staff violated their responsibility and duty of protecting Lewis from cruel and unusual punishment by being deliberate indifferent to his medical needs.

15. Lewis is a 72 year old inmate who has other medical problems such as type 2 diabetes, hypertension and an enlarged prostate. He stays in pain due to the unconstitutional implementation of policies and practices that don't interfere with the preservation of order and maintaining prison security. Denying Lewis medical care prescribed by medical professionals is action taken in bad faith and for no legitimate purposes.

16. Wherefore, Plaintiff requests an Order directing defendants to follow the settled agreement, or re-instate this cause for trial by jury and re-appoint counsel to assist Plaintiff.

Respectfully submitted,
Cornelius B. Lewis

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CORNELIUS BOBBY LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06 C 1024 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| DEE L. BATTAGLIA, et al. | ) | Presiding Judge |
| | ) | |
| Defendants. | ) | |

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement"), is made and entered into by and between the Plaintiff , CORNELIUS BOBBY LEWIS, (hereinafter referred to as "Plaintiff"), and the Defendants,  DEE BATTAGLIA, JIMMY DOMINGUEZ and Dr. WILLARD ELYEA, (hereinafter referred to as "Defendants") and the Illinois Department of Corrections (hereinafter referred to as "IDOC").

## RECITALS

WHEREAS, the Plaintiff filed this lawsuit in the United States District Court for the Northern District of Illinois, Eastern Division, entitled *Lewis v. Battaglia*, 06 C 1024, (hereinafter referred to as "Action'), alleging violations of rights protected by statute(s), regulation(s), common law, the Constitution of the State of Illinois and/or the Constitution of the United States;

WHEREAS, the Defendants deny the allegations and deny any statutory, common law, constitutional or regulatory violations, and affirmatively state that the Plaintiff has failed to state a claim upon which relief can be granted;

1

WHEREAS, all parties agree that neither the fact of this Agreement, nor any term or provision hereof shall be construed as an admission by any party to the Action, the State of Illinois, or the IDOC of the merit or liability of any claims or defenses, or lack thereof, asserted by any party to the Action, or an admission or negation of liability by any of the Defendants; and

WHEREAS, so as to avoid further expense and in recognition of the positions of the parties to the above case, the parties wish to settle and compromise the pending Action, thereby terminating this litigation;

IT IS HEREBY AGREED, by and between the parties as follows:

1.     In consideration for the full and complete settlement of the Action, the Plaintiff shall receive the payment of the sum of five thousand dollars, ($5,000.00) which shall be paid through the Indemnification Fund administered by the Illinois Department of Central Management Services pursuant to the State Employee Indemnification Act (5 ILCS 350/0.01 et seq.) with the draft payable to Cornelius Bobby Lewis, (A-97949), Stateville Correctional Center, Route 53, P.O. Box 112, Joliet, Illinois 60434.  Compensation  payable under this Agreement shall be subject to state laws governing the State Comptroller's obligation to withhold funds that Cornelius Bobby Lewis may owe to other persons or to state agencies. The validity of those claims may be contested through applicable state procedures.

2.     The Illinois Department of Corrections agrees to waive any costs of incarceration it might be able to collect from Cornelius Bobby Lewis for the time he spent incarcerated within the Illinois Department of Corrections.

3.     The IDOC further agrees to allow plaintiff to be examined by doctors at the University of Illinois-Chicago Eye Clinic for evaluation of and  treatment for his eyes for

2

photophobia, as the Doctors at University of Illinois-Chicago Eye Clinic and the IDOC medical Director deem medically necessary. IDOC agrees to allow plaintiff to undergo any medically recommended procedure if medically necessary, including tinted sunglasses that are determined to be medically necessary as determined by the physicians at University of Illinois-Chicago Eye Clinic and the IDOC medical director. If the sunglasses are determined to be medically necessary, Plaintiff will be provided a pair of glasses that satisfy IDOC's security concerns as determined by security staff and the warden at Stateville Correctional Center.

4.     The IDOC further agrees to allow plaintiff to be examined by a podiatrist at the University of Illinois for evaluation of and  treatment of bony extosis, as the Doctors at University of Illinois-Chicago and the IDOC medical Director deem medically necessary. IDOC agrees to allow plaintiff to undergo any procedure or treatment, if determined by the doctors at University of Illinois Medical Center and the IDOC Medical Director to be medically necessary, including shoes that are determined to be medically necessary as determined by the physicians at University of Illinois-Chicago and the IDOC medical director. If shoes are determined to be medically necessary, Plaintiff will be provided a pair of shoes that satisfy IDOC's security concerns as determined by security staff and the warden at Stateville Correctional Center.

5.     It is expressly agreed that the Defendants in their individual capacities shall not be responsible for payment of any sum under this Agreement.

6.     It is further understood and agreed that the above agreed upon terms are not to be construed as an admission of any liability, such liability having been expressly denied. No inducements or representations have been made by any agent or attorney of any party hereby released as to the legal liability or other responsibility of any party claimed responsible. It is

3

agreed that this release applies to known or unknown injuries, costs, expenses, and/or damages alleged to have been suffered or incurred by the Plaintiff due to the actions or inactions of the Defendants as stated in the Plaintiff's complaint(s) filed in the Action, and is intended to be a full and complete disposition of the entire claim(s) and/or cause(s).

7.      The Plaintiff, his heirs, successors and assigns, agree to release, and hereby does release and forever discharge the Defendants in their individual and official capacities, the IDOC, the State of Illinois, their agents, former and present employees, successors, heirs and assigns and all other persons (hereinafter collectively referred to as "Releasees") from all actions, claims, demands, setoffs, suits, causes of action, controversies, disputes, equitable relief, compensatory and punitive damages costs and expenses which arose or could have arisen from the facts alleged or claims made in the Action, which the Plaintiff owns, has or may have against the Releasees, whether known or unknown, from the beginning of time until the effective date of this Agreement, including but not limited to, those at law, in tort (including actions under 42 U.S.C. Section 1983) or in equity.

8.      The Plaintiff and his attorney release, waive and relinquish any claims or rights to attorney's fees, expenses and costs from the Defendants, the State of Illinois or the IDOC allegedly incurred or due in the Action pursuant to 42 U.S.C. Section 1988, or under any other statute, rule or common law provision.

9.      The parties shall file, upon payment of the sum agreed upon, a Stipulation to Dismiss the Action, with prejudice and without attorney's fees, costs or expenses.

10.     No promise has been made to pay or give the Plaintiff any greater or further consideration other than as stated in this Agreement. All agreements, covenants, representations

4

and warranties, express or implied, oral or written, of the parties hereto concerning the subject matter of this Agreement are contained in this Agreement. No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any party hereto to any other party concerning the subject matter of this Agreement. All prior and contemporaneous negotiations, possible and alleged agreements, representations, covenants and warranties, between the parties concerning the subject matter of this Settlement Agreement are merged into this Settlement Agreement. This Agreement contains the entire agreement between the parties.

11. The parties enter into this Agreement as a free and voluntary act with full knowledge of its legal consequences. The parties have not relied upon any information or representations which are not contained in this Agreement.

12. This Agreement shall be construed and interpreted in accordance with the laws of the State of Illinois, without regard to principles of conflict of laws.

13. This Agreement may not be changed, modified or assigned except by the written agreement of the Plaintiff, the IDOC and the Illinois Attorney General.

14 The Plaintiff shall not file this Agreement in any court or disclose to anyone the terms and conditions of this Agreement, and all terms otherwise discussed in settlement negotiations or any particulars thereof, except as is necessary to enforce the terms of this Agreement or except as expressly required by law. Upon inquiry, the Plaintiff shall simply state that these matters were settled to the satisfaction of the parties.

15. This Agreement shall not be construed to constitute a waiver of the State of Illinois or IDOC's sovereign immunity.

5

16.    This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, and all counterparts so executed shall constitute one agreement binding on the parties hereto, notwithstanding that all of the parties are not signatory to the same counterpart.

AGREED:

_Cornelius Bobby Lewis_ _____    _February 6, 2008_____
Cornelius Bobby Lewis, Plaintiff          Date


On Behalf of the Illinois Department of Corrections:


_____    _____
Ed Huntley                                               Date
Chief Legal Counsel
Illinois Department of Corrections


Approved as to Form and Substance


_____    _____
Andrew W. Lambertson                             Date
Assistant Attorney General


                                        Prisoner Litigation
                                        Rev. 7/06

6

2-15-08

After going to class D eye clinic who confirmed my condition, transition eye glasses were prescribed.

## Photophobia:

When naked eyes are exposed to direct or indirect sunlight a condition known as conjunctivitis sets in ~~until no~~, resulting to hyperpigmented patches on my eyes, chronic running, swollen eyelids, headaches or blackouts. DSOC took Transition lens eye glasses from me. When 2005 & 2008 same glasses were received by statewide & returned to sender five (5) times.

Note → Court mandated                    Ex. 1

## Stateville Correctional Center
## MEDICAL PERMIT

Offender Name: Lewis Cornelius        Number: A97949

Housing Unit: C439

*COPY*

- [ ] New Order          [ ] Change
- [✓] Renewal            [ ] Cancel

- [✓] Low Bunk           [ ] State Boots          [ ] Hearing Aid
- [✓] Low Gallery        [✓] Special Shoes  _When high top gym shoes, low cut loafers_
- [ ] Cane               [ ] Slow Walk            [ ] C-Pap Machine
- [ ] Crutches           [ ] No Gym/Yard          [ ] Medical Lay-in
- [✓] Ice _3 Scoops (L) twice/day_   [ ] Shower _____ X week
- [✓] Front cuffing      [ ] Medical Restraints
- [✓] Other: _Foot pan, extramities shoulder brace knee brace 2, metal frame glasses transition (UV) lens, gell pad_

Start Date: 3/31/11          Expiration Date: 3/31/12

Authorized By:
   MD _P bd_          Date: 3/31/11

Reviewed By: _Medical Arguments_

Entered into OTS _P D_

Distribution: Inmate (Pink)
             Cell house Sergeant (yellow)
             Medical Records (white)
             A/W Programs

STA 0168 (EFF. 8/2010)

Pulse

B/P 128/68 — 98

11/24/4

Dr. Dr. ...

Auto Demerick

Ex. 2

Offender Information:

Last Name: Lewis  First Name: Cornelius  MI: ___  ID#: A 97949

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 4/30/09 | Recieved metal framed glasses for I/m from a family member. Will contact Warden Hosey for aproval to give to I/m | [signature] LPN |
| 5/4/09 | Per Asst. Warden Hosey I/m can not have metal framed glasses. Will have to send them out to get state aproved frames | [signature] LPN |
| 5/12/09 | I/m here to HCU. I/m was told we are trying to get new frames. | [signature] LPN |
| 6/10/09 | I/m was ok'd to have his metal framed Transition lenes given to him per Warden I# Shaw | [signature] LPN |

Printed on Recycled Paper

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)



| Offender Information: |
|---|

Last Name: Lewis

First Name: Cornelius

MI: 

ID#: A97949

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 4/29/10<br>1-50P | MD nos.<br><br>The offender farms sent a pair of rubber shower sandal. This would writer discussed with A/W Osborne who OK permitted the inmate to have them | P.<br><br>shower sandals until 4/30/11.<br><br>MOM 30ml PO Qam × 3M<br><br>PGV |

Distribution: Offender's Medical Record

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

Printed on Recycled Paper

June 20, 2014

Warden Williams,

It has been six weeks now since I spoke with Mr. Jones (I.A.) regarding the matter of my need for a new pair of eye glasses. And, I'm told that it has been almost as long since you took possession of some pictures taken by Mr. Jones of the rubber glasses that do not fit and serve no purpose.

It baffles my mind as to why it's taking you so long sir to approve of or deny me a pair of eye glasses I'm in dire need of. All that's required is for you to contact stateville's optometrist and order him to reorder the black plastic frame transition lens eye glasses that actually fit me. It really is that simple; that is, assuming you aren't sure of just what you should do. I shouldn't have to remind you sir that my transition eye glasses are court mandated and I do need them.

Please let me hear back from you at your earliest convenience. Thank you!

Cornelius Lewis
A97949   C-439

March 13, 2015

Dear Warden Williams,

Once again, and after more than 2 months of nothing, I'm writing to inquire about the status of the eye glasses you told me I should have to replace the current glasses I have that are broken. Since stateville doesn't appear capable of addressing this matter in a reasonable period of time, I need to ask you sir if I can have a pair of eye glasses sent to me from Prism Optical where my current eye glasses come from? It would merely require sending a script to a friend in Minnesota (my home state) and have them forward some script along with the money for the glasses which will be dark plastic frames.

I need some transition lens eye glasses as soon as possible. Please let me hear back from you!

Sincerely,
Cornelius Lewis

*Note: Never Received Call Pass.*



**Illinois**
**Department of**
**Corrections**

**Bruce Rauner**
Governor

**Stateville Correctional Center**
**Route 53, P.O. Box 112**
**Joliet, IL 60434**

Telephone: (815) 727 -3607
TDD: (800) 526-0844

May 26, 2015

**Inmate: Cornelius Lewis- A97949- C439**

**RE: Inmate Issues- Eyeglasses**

Dear Mr. Lewis:

This is in response to your recent communication to me regarding an issue or concern that you expressed. Your concerns are being reviewed and referred if necessary to the appropriate individual for resolution.

You were seen by the Eye Doctor on April 6th and your glasses were ordered. Additionally you have a follow up appointment scheduled in June.

If there is a need for additional information or a formal response you will be notified in writing. I appreciate that you took the time to communicate your concerns and observations to me.

I trust this is responsive to your request.

Sincerely

Tarry Williams
Warden

TW/jal

Cc: File

Previous Responses to this issue
1/9/15
3/16/15

*Note: Never Saw Anyone!*



**Illinois
Department of
Corrections**

**Pat Quinn**
Governor

**S. A. Godinez**
Director

**Stateville Correctional Center
Route 53, P.O. Box 112
Joliet, IL  60434**

**Telephone: (815) 727 -3607
TDD: (800) 526-0844**

January 9, 2015

**Inmate:  Cornelius Lewis- A97949- C439**

**RE: Inmate Issues- Glasses**

Dear Mr. Lewis:

This is in response to your recent communication to me regarding an issue or concern that you expressed.  Your concerns are being reviewed and referred if necessary to the appropriate individual for resolution.

If there is a need for additional information or a formal response you will be notified in writing.  I appreciate that you took the time to communicate your concerns and observations to me.

I trust this is responsive to your request.

Sincerely

Tarry Williams
Warden

TW/jal

cc:    File

**\*Note: Never Received Call Pass.**



## Illinois
## Department of
## Corrections

**Bruce Rauner**
Governor

Stateville Correctional Center
Route 53, P.O. Box 112
Joliet, IL  60434

Telephone: (815) 727 -3607
TDD: (800) 526-0844

March 16, 2015

**Inmate:  Cornelius Lewis- A97949- C439**

**RE: Inmate Issues- Eyeglasses**

Dear Mr. Lewis:

This is in response to your recent communication to me regarding an issue or concern that you expressed.  Your concerns are being reviewed and referred if necessary to the appropriate individual for resolution.

You are scheduled to see the new eye doctor upon his arrival.

If there is a need for additional information or a formal response you will be notified in writing.  I appreciate that you took the time to communicate your concerns and observations to me.

I trust this is responsive to your request.

Sincerely

Larry Williams
Warden

TW/jal

Cc:  File

| Date: MAY 11, 2015 | Offender: (Please Print) Cornelius Lewis | ID#: A97949 |
|---|---|---|
| Present Facility: Stateville CC | Facility where grievance issue occurred: Stateville CC | |

**NATURE OF GRIEVANCE**

- ☒ Personal Property
- ☒ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☐ Medical Treatment
- ☐ ADA Disability Accommodation
- ☐ HIPAA
- ☐ Other (specify): _____

☐ Disciplinary Report: ____ / ____ / ____
  Date of Report                    Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
  Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
  Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
  Chief Administrative Officer, only if EMERGENCY grievance.
  Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved): _____

During the 4-30-15 shakedown by the tactical shakedown crew, I had a pair of flip-flop Under Armor shower shoes taken from my cell that were approved by the medical and security staff. These shower shoes are on my medical permit and necessary due to a foot condition I have (birth defect). Same shower shoes were not listed on my shakedown slip. "See attachments"

Relief Requested: The return of my flip-flop shower shoes or in the alternative, replace them as soon as possible.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_Cornelius Lewis_   C439   A97949   05, 11, 15
Offender's Signature          ID#          Date

(Continue on reverse side if necessary)

---

| **Counselor's Response (if applicable)** |
|---|

Date Received: 05 / 13 / 2015   ☐ Send directly to Grievance Officer   ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: Grievant failed to provide a sufficient amount of evidence to prove ownership of shower shoes, and therefore cannot substantiate claim.

J Prado II                                   05 / 14 / 2015
Print Counselor's Name      Counselor's Signature      Date of Response

---

| **EMERGENCY REVIEW** |
|---|

Date Received: ____ / ____ / ____   Is this determined to be of an emergency nature?   ☐ Yes; expedite emergency grievance
  ☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____                    ____ / ____ / ____
Chief Administrative Officer's Signature                            Date

See Ex. 6!


Distribution: Master File: Offender

Printed on Recycled Paper

DOC 0046 (8/2012)

## Illinois Department of Corrections
## MEDICAL PERMIT
### Stateville Correctional Center

Offender Name: _Lewis Cornelius_ Number: _A 97949_

Housing Unit: _C 439_

☐ New Order     ☐ Change
☐ Renewal     ☐ Cancel

☒ Low Bunk     ☐ State Boots / Special Shoes _high Top gym shoes_ _do not softer_
☒ Low Gallery     ☐ Slow Walk     ☐ C-Pap Machine
☐ Crutches _____     ☐ No Gym/Yard     ☐ Medical Lay-in
☐ Shower ____ X week     ☐ Hearing Aid     ☒ Ice _3 large scop_ 330
☐ Waist Chain     ☒ Leather Restraints _Shower slipper undersarmer_
☒ Other: _Front cuffing - shoulder brace_ _knee brace with metal_

Comments: _Transitional Jensen_

Start Date: _5-7-14_     Expiration Date: _5-7-15_

Authorized By:
    MD _Glass_ Date: _5-7-14_
Reviewed By: _Esta Marta Rn_ _5/8/14_
Entered into OTS By: _____

Distribution: Inmate
    Cell House Sergeant
    Medical Records

Printed on Recycled Paper

STA 0168 (Rev. 2/16/2012)

Rec'd back 7-6-15

 Ex.7

| Date: June 27, 2015 | Offender: (Please Print) Cornelius Lewis | ID#: A97949 |
|---|---|---|

| Present Facility: Stateville CC | Facility where grievance issue occurred: Stateville CC |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [ ] Other (specify): _____

- [ ] Disciplinary Report: ____/____/____
    Date of Report                    Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer,** only if EMERGENCY grievance.
**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

As the Attorney General's Office, stateville's litigation and ADA Coordinators, and my medical records will attest to, my medical care is "court mandated" as the result of a lawsuit I successfully litigated in 2006 against the stateville medical department. Until recently, my medical needs were addressed with a reasonable degree of efficiency. But on 6-26-15 while at the healthcare unit to have my 2014-15 medical permit renewed, Dr. Obaisi refused to renew my medical permit "in its entirety" even   ON BACK

**Relief Requested:** Enjoin from Dr. Obaisi who ordered him to provide subpar medical care, have that order reversed whereby Dr. Obaisi can renew my medical permit in its entirety.

- [ ] Check only if this is an **EMERGENCY** grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Cornelius Lewis C435          A97949   06/27/15
Offender's Signature                    ID#        Date

*(Continue on reverse side if necessary)*

| **Counselor's Response** (if applicable) | |
|---|---|

Date Received: 7, 5, 15     [ ] Send directly to Grievance Officer     [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: A copy of this grievance has been forwarded to the HCU for review and response and the original grievance has been forwarded to the grievance office. You will receive a final response from the grievance office when the HCU responds to same.

J. Jamison                    J. Jamison          7, 6, 15
Print Counselor's Name        Counselor's Signature   Date of Response

| **EMERGENCY REVIEW** | |
|---|---|

Date Received: ____/____/____     Is this determined to be of an emergency nature?     [ ] Yes; expedite emergency grievance
[ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____                    ____/____/____
Chief Administrative Officer's Signature              Date

through he himself and previous stateville medical directors did so. I asked him why he no longer chose to give me a permit for medical issues he knows I need it for? He said he had orders to no longer provide certain medical care, and in my case: no more ice, to soak my feet and knees; no more front cuffing and/or leather restraints due to a gun shot wound in my wrist; no more extra mattress to aleviate the chronic pain in my lower back, which continues to exist; and no more rubber shower shoes with velcro to accomodate a foot condition I have from birth. I reminded Dr. Obaisi of my court mandate, to which he responded: "I know about that, but my hands are tied and I have to follow orders.

I'm a 72 year old inmate with a litany of medical problems that need to be addressed because they aren't going to go away. I also don't have the luxury of going through the 6-8 month grievance process while in prison. My lawyers are awaiting a reply to this grievance to determine whether or not they should take this matter directly to the federal judge who issued the mandate whereby stateville administrators can explain why they knowingly and willingly chose to violate the mandate.

It should be noted that the medical issues complained of herein have been an integral part of my life for over 30 years. My lawsuit was my response to IDOC and Wexford's denial of proper medical care. And the mandate is the court's way of assuring me that I would receive the proper medical care.

Cornelius Lewis



## Illinois
## Department of
## Corrections

**Bruce Rauner**
Governor

**Gladyse C. Taylor**
Acting Director

Stateville Correctional Center
Route 53, P.O. Box 112
Joliet, IL 60434

Telephone: (815) 727 -3607
TDD: (800) 526-0844

June 30, 2015

**Inmate: Cornelius Lewis- A97949- C439**

**RE: Inmate Issues- Medical Permits**

Dear Mr. Lewis:

This is in response to your recent communication to me regarding an issue or concern that you expressed. Your concerns are being reviewed and referred if necessary to the appropriate individual for resolution.

Medical decisions are made by the Medical Director.

If there is a need for additional information or a formal response you will be notified in writing. I appreciate that you took the time to communicate your concerns and observations to me.

I trust this is responsive to your request.

Sincerely

Tarry Williams
Warden

TW/jal

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION **FILED**

AUG 03 2015 EAA
8-3-15
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Cornelius B. Lewis,
    Plaintiff,

        v.

Dee Battaglia, et. al,
    Defendants.

Case No. 06 C 1024

Hon. Joan H. Lefkow
Judge Presiding

## Notice of Filing

To: Richard A. Tjepkema
Charysh & Schroeder, Ltd
33 N. Dearborn, Ste. 1300
Chicago, IL 60602

Andrew Lambertson
Asst. Attorney General
100 W. Randolph, 13th Fl.
Chicago, IL 60601

PLEASE TAKE NOTICE that on July 30, 2015, the attached Motion for Relief From Judgement was filed with the Clerk of the U.S. District Court for the Northern District of Illinois, Eastern Division, 219 S. Dearborn St. Chicago, IL 60604, with copies sent to the above parties via U.S. Mail.

Cornelius Lewis
Cornelius B. Lewis
#A97949
P.O. Box 112
Joliet, IL 60434